**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **LAWRENCE BAILEY et al.,** | * | |
| **Plaintiffs,** | * | |
| **v.** | | **Case No.: GJH-20-2577** |
| | * | |
| **PHH MORTGAGE CORPORATION et al.,** | * | |
| **Defendants.** | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION**

Plaintiffs Lawrence Bailey and Deborah Bailey brought this civil action against Defendants PHH Mortgage Corporation ("PHH"), HSBC Bank USA, National Association ("HSBC"), and Ocwen Loan Servicing, LLC ("Ocwen") alleging breach of contract (Counts I–III), violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1631 *et seq* (Count IV) and 15 U.S.C. § 1639g (Count V), the Maryland Consumer Protection Act, ("MCPA"), Md. Code Ann., Com. Law § 13-316(b) *et seq* (Count VI), the federal Fair Housing Act, 42 U.S.C. § 3604(b) (Counts VII–VIII), and abuse of process under Maryland state law (Count IX). ECF No. 12. Pending before the Court is Defendants' Motion to Dismiss Certain Counts of Plaintiff's First Amended Complaint. ECF No. 14. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Defendants' Motion to Dismiss is granted.

**I.    BACKGROUND[1]**

**A. Factual Background**

---

[1] Unless otherwise stated, the background facts are taken from Plaintiff's First Amended Complaint, ECF No. 12, and are presumed to be true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

On January 16, 2007, Plaintiffs Lawrence and Deborah Bailey, both African American, ECF No. 12 ¶ 7–8, executed a $415,000 Note in favor of Fidelity Mortgage, which was secured by a mortgage on Plaintiff's real property located at 7603 Allentown Farm Court, Fort Washington, Maryland 20744 (the "Property"). *Id.* ¶ 9. At a time unknown to Plaintiffs, HSBC acquired Fidelity Mortgage's interest in the Property, and at all times relevant to this action, HSBC was the Note Holder of Plaintiffs' mortgage. *Id.* ¶¶ 10–11.

On May 3, 2018, an Order to Docket was filed in Prince George's County Circuit Court (Case No. CAEF18-13986) alleging that Plaintiffs defaulted on the repayment terms of their loan and, at the time of the filing of the Order to Docket, Ocwen was the loan servicer for Plaintiff's mortgage. *Id.* ¶¶ 12–13. At all times relevant, Ocwen, acting as an agent of HSBC, "collected monthly mortgage payments and, when appropriate, modified mortgage terms, released liens, paid property insurance taxes, and initiated foreclosure proceedings." *Id.* ¶¶ 14–15. Plaintiffs' Emergency Motion for a Temporary Restraining Order (Case No. CAEF18-13986) was denied, and the Property was sold at a foreclosure action on October 16, 2018. *Id.* ¶ 16. The Property was "bought back" by HSBC, Ocwen continued to act as the loan servicer, *id.* ¶ 17, and Ocwen placed the Property in its "property preservation unit." *Id.* ¶ 18. Plaintiffs timely appealed the denial of the Temporary Restraining Order to the Court of Special Appeals on October 16, 2018 (CSA-REG-2719-2018), *id.* ¶ 19, and while the case was pending appeal, the foreclosure was ratified by the Prince George's County Circuit Court on December 27, 2018. *Id.* ¶ 20.

On April 23, 2019, after a successful mediation (CSA-REG-2719-2018), Plaintiffs executed a Settlement Agreement and Loan Modification Agreement. *Id.* ¶¶ 21–22. Plaintiffs allege that Ocwen was a party to the written Settlement Agreement in its capacity as HSBC's agent, *id.* ¶¶ 23–24, "the terms of which are binding on the beneficiaries and investors in the

mortgage and their predecessors, successors, assigns, principals, parents, affiliates, and clients of all parties to the Agreement." *Id.* ¶ 23. Plaintiffs, Ocwen, and HSBC were parties to the written Loan Modification, the terms of which are also binding on the successors and assigns. *Id.* ¶ 25. The terms of the Loan Modification Agreement were incorporated into the Settlement Agreement and under the terms of the Loan Modification Agreement, the new monthly payments were $2369.32, which included $893.67 for taxes and forced place insurance. *Id.* ¶¶ 26–28. Additionally, a term of the Loan Modification Agreement was that Plaintiffs' monthly payments would be lowered upon providing proof of insurance, which Plaintiffs provided on March 28, 2019. *Id.* ¶¶ 29, 31. Ocwen reserved the right to determine what constituted proof of adequate insurance. *Id.* ¶ 32. It was projected to Plaintiffs in the Loan Modification Agreement that the monthly payment would decrease by at least $370.23. *Id.* ¶ 30. The Loan Modification Agreement further provided that all notices should be sent directly to Plaintiffs at the Property. *Id.* ¶ 33.

Plaintiffs allege that the Settlement Agreement provided several conditions. First, the parties subject to the agreement could reveal "the contents of the agreement to a lender in connection with an application for credit and that any release of known or unknown claims did not apply to any party who failed to perform under the terms of the agreement." *Id.* ¶ 34. Second, the Settlement Agreement's release "did not include claims arising from, or related to, the Parties or to a party's continuing relationship as mortgagor and mortgagee." *Id.* ¶ 35. Third, the Settlement Agreement provided that "any release, and the terms of the agreement were subject to good faith, and that at the time of execution, each party represented that there was no actual or implied knowledge of past or projected misconduct or material misrepresentations." *Id.* ¶ 36.

On May 8, 2019, Plaintiffs allege that, at the direction of Ocwen, a third party was sent to the Property to cut down a tree, and Plaintiffs were informed that their property was listed as "abandoned." *Id.* ¶ 37. Plaintiffs allege that Ocwen was informed of this incident the day it occurred. *Id.* ¶ 38. Then, from May 8, 2019 to May 13, 2019, Ocwen sent various third parties to the Property to make alterations, all of whom indicated to Plaintiffs that "their property was listed as abandoned and that they were authorized to be there." *Id.* ¶ 39. On May 13, 2019, Plaintiffs allege that Ocwen cancelled all their utilities, *id.* ¶ 40, and two days later, on May 15, 2019, Ocwen executed the Settlement Agreement and Loan Modification and "assured Plaintiffs that any property preservation activities would stop." *Id.* ¶ 41. HSBC also executed the Loan Modification Agreement on May 15, 2019. *Id.* ¶ 42. Plaintiffs allege that Ocwen continued to act as the loan servicer for Plaintiffs' mortgage at the direction of HSBC and on its behalf following the dismissal of the foreclosure action (CAEF18-1398) and Plaintiffs' related appeal (CSA-REG-2719-2018) in May 2019. *Id.* ¶ 45, 43–44.

Plaintiffs further allege that in June and July 2019, Ocwen initially refused to accept Plaintiffs' payments "for reasons never articulated," *id.* ¶ 46, and on July 19, 2019, by Consent Order, the ratification of the sale in the foreclosure case (CAEF18-13986) was vacated, the report of sale was withdrawn, ownership in the Property was re-vested to Plaintiffs, and the Deed of Trust was revived.[2] *Id.* ¶ 47. Plaintiffs allege that notwithstanding the dismissal of both the appeal and the foreclosure matters, Ocwen failed to: (1) discuss the status of Plaintiffs' account with them, only instructing Plaintiffs that "the matter was in litigation," (2) restore Plaintiffs' online account access or resume sending Plaintiffs' billing statements or account summaries, (3) terminate property preservation efforts, specifically with respect to third parties entering the

---

[2] The Consent Order was recorded in the Land Records of Prince George's County on August 16, 2019 "in Plat Book 42447 Page 314." ECF No. 12 ¶ 48.

Property "post[ing] notices, survey[ing] the property, and [tak]ing pictures, and (4) inform utility companies that the Property revested to Plaintiffs. *Id.* ¶¶ 49–52. Plaintiffs allege that they were unable to restore utility service accounts at the Property. *Id.* ¶ 53.

In August 2019, Plaintiffs allege that they attempted to refinance their loan with another lender but that Ocwen "refused to provide any of the needed financial information or needed paperwork" to complete their applications, specifically Plaintiffs' pay-off amount. *Id.* ¶ 54. Ocwen also continued to charge Plaintiffs for forced place insurance despite Plaintiffs providing proof of insurance in March 2019. *Id.* ¶¶ 55, 31. Further, Plaintiffs contend that taxes on the Property were not paid, despite Plaintiffs' monthly payments including such payments, and that they ultimately had to pay these taxes separately, in addition to their monthly payments to Ocwen. *Id.* ¶ 56. Because Plaintiffs believed that Ocwen was in breach of the terms of the Settlement and Loan Modification Agreements, Plaintiffs, through their counsel, contacted Ocwen to discuss their concerns. *Id.* ¶ 57. Then, between August 2019 and October 2019, HSBC changed Plaintiffs' loan servicer from Ocwen to PHH Mortgage Services. *Id.* ¶ 58. PHH Mortgage Services merged with PHH Mortgage Corporation on December 21, 2015. *Id.* ¶ 59.

Plaintiffs allege that neither HSBC nor Ocwen informed them that PHH would be their new loan servicer for their mortgage. *Id.* ¶ 61. Plaintiffs allege that PHH, as an agent of HSBC and Ocwen's successor, is "bound to the terms of the [S]ettlement and [L]oan [M]odification [A]greements." *Id.* ¶ 62. Plaintiffs contend that PHH refused to discuss Plaintiffs' account and has similarly cited "litigation" as the basis for their refusal, and that PHH has also refused to send Plaintiffs' correspondence including billing statements or account summaries. *Id.* ¶¶ 63–34. PHH also (1) continued property preservation activities as previously described, (2) failed to inform utility companies that the Property re-vested to Plaintiffs, and (3) refused to provide

Plaintiffs requested financial information (pay-off amount) so they could apply for credit, until after Plaintiffs initiated the instant action. *Id.* ¶¶ 65–67. As with Ocwen, Plaintiffs allege that, despite providing proof of insurance, PHH also failed to adjust Plaintiffs' monthly payments. *Id.* ¶ 68. Plaintiffs allege that, to date, the failure of HSBC, Ocwen, and PHH "to adjust Plaintiffs' monthly payments as agreed has resulted in Plaintiffs making a total of $6293.91 in overpayments from April 1, 2019 to September 1, 2019," *id.* ¶ 69, which were "involuntary and resulted in financial constraints" to other aspects of Plaintiffs' monthly budget. *Id.*  ¶ 70.

On December 16, 2019, Plaintiffs, through counsel, notified Ocwen and PHH of their intent to sue for breach of the Settlement and Loan Modification Agreements, and other claims, to which neither responded. *Id.*  ¶ 71. All of these actions were "intentional," and as a result, Plaintiffs only received billing notices for their utilities as they were scheduled for disconnection and the notice was addressed only to "All Occupants." *Id.* ¶ 73. Because Plaintiffs were not listed as the account holders for their utilities, and Defendants refused to provide the necessary information to restore Plaintiffs' account information, Plaintiffs "incurred monthly late and other administrative fees," which drove up the cost of maintenance at the Property. *Id.* ¶ 74. Plaintiffs incurred over $5,000 in late and other administrative fees maintaining utility services between May 2019 and September 2020. *Id.* ¶ 75. Further, Plaintiffs were unable to "contest their utility bills or ensure they were billed for their actual utility usage" because the generic disconnection notices sent to "All Occupants" failed to include the detailed billing information included in regular billing statements. *Id.* ¶ 77. Plaintiffs also incurred "additional costs" of an unspecified amount "because they were unable to apply for money-saving programs through their utility companies." *Id.* 76. At the time of the instant action, Plaintiffs allege that their loan is current, *id.* ¶ 78 and contend that "Defendants' acts and omissions had no legitimate purpose." *Id.* ¶ 79.

**B.  Procedural History**

On February 27, 2020, Plaintiffs filed their initial suit in the Circuit Court for Prince

George's County. ECF No. 2; ECF No. 1-2. Defendants removed the action to this Court on

September 6, 2020. ECF Nos. 1–4. Defendants filed the first Motion to Dismiss, ECF No. 10, on

September 28, 2020, which Plaintiffs opposed, ECF No. 11, on October 12, 2020. Plaintiffs then

filed the First Amended Complaint, ECF No. 12, on October 16, 2020. Defendants filed the

pending Motion to Dismiss Plaintiffs' First Amended Complaint, ECF No. 14, on October 30,

2020. Plaintiffs filed a Response in Opposition to Defendants' Motion to Dismiss, ECF No. 15,

on November 13, 2020, and Defendants filed a Reply in Support of their Motion to Dismiss

Plaintiffs' First Amended Complaint, ECF No. 17, on November 25, 2020.

**II.    STANDARD OF REVIEW**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft

v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing

*Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555 ("[A]

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do.")).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve

contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v.*

*City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citations and internal quotation marks

omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true

all of the factual allegations contained in the complaint[,]" and must "draw all reasonable

inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon*

*Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted).

The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cnty.*

*Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations,

*see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any

reference to actual events, *see United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847

(4th Cir. 1979). !

## III.   DISCUSSION

In the First Amended Complaint, Plaintiffs allege breach of contract (Counts I–III),

violations of the TILA, specifically 15 U.S.C. § 1631 (Count IV) and 15 U.S.C. § 1639g (Count

V), Section 13-316(b) of the MCPA (Count VI), Section 3604(b) of the federal Fair Housing Act

(Counts VII–VIII), and abuse of process under Maryland state law (Count IX). ECF No. 12. In

the pending motion, Defendants seek to dismiss only Counts IV–IX for failure to state a claim.[3]

ECF No. 14 at 4.[4] The Court will address each claim in turn.

### A.  Truth in Lending (TILA) Claims

---

[3] Defendants "deny that they breached the loan modification agreement or failed to implement the agreement or overcharged Plaintiffs." ECF No. 14 at 2 n.1. Defendants allege that they "would need to introduce evidence outside the pleadings in order to rebut certain of Plaintiffs' claims," therefore they do not move for dismissal under Rule 12(b)(6) as to Counts I–III. *Id.*

[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Plaintiffs assert two claims under the Consumer Protection Act, also known as the Truth in Lending Act. *See* ECF No. 12 ¶¶ 114–130. The Truth in Lending Act serves to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to [her] and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). Plaintiffs allege that Defendants failed to provide Plaintiffs statements disclosing "the amount of principal payments, interest rates, or late feels for each billing cycle" in violation of 15 U.S.C. § 1631 and that Defendants "did not deliver pay off balances to the Plaintiffs within seven days after receiving the request" in violation of 15 U.S.C. § 1639g. *Id.* ¶¶ 117, 124. The Court will address both provisions.

## 1. § 1631

Congress passed the TILA to assure a meaningful disclosure of credit terms to avoid the uninformed use of credit by consumers. 15 U.S.C. § 1601(a). A plain reading of a sections (a)–(d) of Section 1631 does not impose requirements to provide the information that Plaintiffs seek. *See id.* § 1631. The Supreme Court has clarified that the TILA "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). Plaintiffs cite to no law, nor has the Court been able to locate any, stating that TILA requires creditors to provide information about the "amount of principal payments, interest rates, or late fees, for each billing cycle." *See* ECF No. 14 ¶ 117.

Additionally, Plaintiffs' contention that 15 U.S.C. § 1631(a) "further requires that creditors disclose . . . information regarding the cost of credit" is inaccurate and fails to support their argument. *See* ECF No. 15-1 at 4. Section (a) has no such requirement, but rather, it

generally discusses the duty of a creditor or lessor to one or more obligor, and it does not mention "the cost of credit." 15 U.S.C. § 1631(a). Accordingly, this section cannot be read to create an affirmative duty to disclose certain information. Because Section 1631 imposes no such requirement, the Court grants Defendants' Motion to Dismiss Count IV.

### 2.   § 1639g

15 U.S.C. § 1639g provides that "[a] creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance[.]" Although the statute reaches both creditors and servicers, TILA "imposes civil liability only on creditors and, only in limited circumstances, assignees of creditors." *Kemp v. Seterus, Inc*., 348 F. Supp. 3d 443, 447 (D. Md. 2018) (citing 15 U.S.C. §§ 1640(a), 1641(a)); *see also Strickland-Lucas v. Citibank, N.A*., 256 F. Supp. 3d 616, 626 (D. Md. 2017) ("[T]he only parties who can be liable for TILA violations are the original creditor and assignees of that creditor.") (internal quotation marks and citations omitted)). An assignee of a creditor may be liable "only if the violation for which the action or proceeding is brought is apparent on the face of the disclosure statement[.]" 15 U.S.C. § 1641(a). Under TILA, a creditor is defined as one "who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. § 1602(g).

Plaintiffs' claims against Ocwen and PPH, who Plaintiffs admit are loan servicers, *see* ECF No. 12 ¶¶ 17, 58, 61, cannot survive because they are neither a creditor nor assignee

creditor. *See, e.g.*, *Mbongo v. Specialized Loan Servicing, LLC*, No. 15-cv-2941-PJM, 2016 WL 8671841, at *5–6 (D. Md. June 24, 2016) (dismissing TILA claim against servicer because it was neither a creditor nor the creditor's assignee); *Mosley v. OneWest Bank*, No. 11-cv-00698-RDB, 2011 WL 5005193, at *4 (D. Md. Oct. 19, 2011) (holding that plaintiff failed to state a TILA claim against loan servicer).

The Court's analysis with respect to HSBC, as an assignee, requires additional inquiry. Plaintiffs admit that HSBC is not the original creditor to whom their mortgage debt was initially payable, *see* ECF No. 12 ¶ 9 ("On January 16, 2007, Plaintiffs executed a $415,000.00 Note in favor of Fidelity Mortgage[.]"); *see also id.* ¶¶ 10–11). The remaining question, then, is whether the failure to provide pay off balances is a violation that is "apparent on the face of the disclosure statement." *See* 15 U.S.C. §1641(a). The Eleventh Circuit analyzed this issue and held that "there is no way that the failure to provide a payoff balance can appear on the face of the disclosure statement." *Evanto v. Fed. Nat. Mortg. Ass'n*, 814 F.3d 1295, 1297–98 (11th Cir. 2016). The Eleventh Circuit reasoned that "[a] disclosure statement is a document provided before the extension of credit that sets out the terms of the loan" while a payoff balance is a document that "can be provided only after a loan has been made and contains the amount yet to be repaid." *Id.* at 1297. As such, a failure to provide a payoff balance cannot appear on the face of the disclosure statement. *Id.* This Court, as it did in *Kemp*, accepts the logic of the Eleventh Circuit and finds that Plaintiffs fail to state a cognizable TILA claim against Defendant assignee HSBC. Accordingly, the Court grants Defendants' Motion to Dismiss Count V.[5]

## B.  Maryland Consumer Protection Act (MCPA) Claim

---

[5] Because Plaintiffs failed to state a cognizable claim under the TILA, the Court need not address Defendants' alternative argument that Plaintiffs failed to plead that their request was transmitted in writing. *See* ECF No. 17 at 5.

Plaintiffs assert a violation of Section 13-316(b) of the MCPA against Defendants HSBC and PHH for their alleged failure to provide Plaintiffs, within seven days of PHH becoming the servicer, "[PHH's] contact information, Plaintiffs' principal and escrow balances, their responsibilities, and a statement of liability[.]" ECF No. 12 ¶ 134. Section 13-316(b) requires certain initial disclosures from a mortgage servicer, which must be made within seven days of acquiring the mortgage. Specifically, it requires a mortgage servicer to provide the mortgagor written notice of the following:

> (1) The name, address, and telephone number of the new servicer and the address where mortgage payments are to be forwarded;
>
> (2) The principal balance and escrow balance;
>
> (3) The telephone number of the contact designated under subsection (c) of this section;
>
> (4) The responsibilities of the contact under subsection (c) of this section; and
>
> (5) A statement that the servicer's violation of this section will result in the servicer being held liable under subsection (e) of this section.

Md. Code Ann., Com. Law § 13-316(b)(1)–(5). Further, Section 13-316(e) "provides a remedy only for economic damages arising from a mortgage servicer's failure to respond to an inquiry[.]" *Robinson v. Nationstar Mortg. LLC*, No. 14-cv-3667-TDC, 2019 WL 4261696, at *11 (D. Md. Sept. 9, 2019) (citation omitted). A private party bringing suit under the MCPA, including Section 13-316(b), must still allege "an actual injury or loss." *Lloyd v. General Motors Corp.*, 916 A.2d 257, 277 (Md. 2007); *see also Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 467 (D. Md. 2013).

In the instant action, Plaintiffs contend that they "had no way to ensure that [their] payments were being credited to their account properly." ECF No. 12 ¶ 136. Plaintiffs then go on to assert that as a result of Defendants alleged violations, they suffered "in the form of financial

12

losses, mental anguish, and emotional distress." *Id.* ¶ 137. However, Plaintiffs have failed to

plead their MCPA claim with sufficient particularly such that the Court can infer that Plaintiffs'

inability to ensure that their payments were properly credited is a "financial loss." Absent an

allegation that Plaintiffs monthly payments were miscredited or misapplied, which Plaintiffs do

not specifically allege, *see id.*, Plaintiffs remained liable for the debt they already owed. And

Plaintiffs cannot base an MCPA claim on the allegation that they were damaged by paying a debt

they already owed. *See Willis v. Countrywide Home Loans Servicing, L.P.,* No. 09-cv-1455-

CCB, 2009 WL 5206475, at *6 (D. Md. Dec. 23, 2009). Given that Plaintiffs have failed to

adequately plead economic loss, Plaintiffs' remaining claims of "mental anguish and emotional

distress," without more, fail to state a viable claim under the MCPA.[6] *See Jackson v. Planet

Home Lending*, LLC, No. 20-cv-0773-TDC, 2021 WL 2209920, at *9 (D. Md. June 1, 2021)

("Because [plaintiff] identifies no economic loss as a result of the remaining section 13-316

claims, he fails to state a viable claim under that statute."). Accordingly, the Court grants

Defendant HSBC and PHH's Motion to Dismiss with respect to Count VI.

## C. Fair Housing Act (FHA) Claims

 Plaintiffs assert two claims under the Fair Housing Act, specifically 42 U.S.C. § 3604(b).

ECF No. 12 ¶¶ 138–177. Section 3604(b) states that "it shall be unlawful":

> To discriminate against any person in the terms, conditions, or privileges of sale or rental
> of a dwelling, or in the provision of services or facilities in connection therewith, because
> of race, color, religion, sex, familial status, or national origin.

---

[6] Plaintiffs' argument that they were "denied the opportunity to refinance their mortgage through another financial institution," ECF No. 12 ¶ 54, is likewise unavailing because, as Defendants point out, Plaintiffs fail to allege how the failure to provide written notice of the information required by Section 13-316(b) resulted in their inability to refinance their mortgage when Plaintiffs allege that this occurred *prior* to the service transfer between Ocwen and PHH. *Id.* ¶ 58.

42 U.S.C. § 3604(b). "There are two theories of discrimination cognizable under the Fair

Housing Act: disparate treatment (or intentional discrimination) and disparate impact." *Nat'l*

*Fair Hous. All. v. Bank of Am., N.A.*, 401 F. Supp. 3d 619, 630 (D. Md. 2019) (citing *Texas*

*Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519 (2015)). In the

instant case, Plaintiffs allege claims under both. Specifically, Plaintiffs allege a claim of

disparate treatment in Count VII, ECF No. 12 ¶¶ 138–166, and a claim of disparate impact in

Count VIII, *id.* ¶¶ 167–177. "For purposes of a motion to dismiss for lack of legally cognizable

discrimination, the court must discern if either predicate theory of discrimination is sufficiently

pled." *Nat'l Fair Hous. All.*, 401 F. Supp. at 631. Thus, the Court will analyze each claim

separately.

### 1. Disparate Treatment

"To state a prima facie case of discrimination under § 3604(b), [plaintiffs] must show that

[they are] a member[s] of a protected class and that [they were] treated differently than other

tenants because of [their] membership in that class." *Roberson v. Graziano*, No. 09-cv-3038-

WDQ, 2010 WL 2106466, at *2 (D. Md. May 21, 2010), *aff'd*, 411 F. App'x 583 (4th Cir. 2011)

(citing *Pinchback v. Armistead Homes Corp.*, 907 F.2d 1447, 1451 (4th Cir. 1990)). Further,

plaintiffs must plead facts "beyond mere speculation that [they were] treated differently from

others [] *because of*" their membership in the protected class. *Hardaway v. Equity Residential*

*Servs., LLC*, No. 13-cv-0149-DKC, 2015 WL 858086, at *6 (D. Md. Feb. 26, 2015) (emphasis in

original), *aff'd sub nom. Hardaway v. Equity Residential Mgmt. LLC*, 675 F. App'x 381 (4th Cir.

2017). Here, by merely including conclusory allegations that "Defendants have failed to provide

Plaintiffs any of the benefits of the provisions" of the Loan Modification and Settlement

Agreements "because of the Plaintiffs' race," ECF No. 12 ¶ 142, and that Defendants' "actions

and omissions" are "part of a pattern of facial discrimination that Plaintiffs experienced," *id.* ¶ 163, Plaintiffs fail to plead either. In fact, Plaintiffs fail to mention any other borrowers at all in their First Amended Complaint, let alone to allege that they were treated differently from other borrowers because of their race.[7] *See Roberson,* 2010 WL 2106466, at *3 (granting motion to dismiss where plaintiff failed to explain "how he was treated differently than the other tenants because of [protected] characteristics."); *Hardaway*, 2015 WL 858086, at *6 (same). Accordingly, because Plaintiffs failed to state a prima facie case of discrimination, the Court grants Defendants' Motion to Dismiss Count VII.[8]

## 2. Disparate Impact

In *Inclusive Communities*, the Supreme Court confirmed that disparate-impact claims are cognizable under the FHA and that they must be analyzed under a three-step burden-shifting framework. 576 U.S. at 545. To state a claim of disparate impact, under the first step of the framework, a plaintiff "must demonstrate a robust causal connection between the defendant's challenged policy and the disparate impact on the protected class." *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 424 (4th Cir. 2018) (explaining the three-step burden shifting framework for disparate-impact claims); *Prince George's Cty., Maryland v. Wells Fargo & Co.*, 397 F. Supp. 3d 752, 766 (D. Md. 2019) (confirming that, at the motion to dismiss stage,

---

[7] Plaintiffs incorrectly argue that they "are not required to identify similarly situated individuals of a different race who were treated different in their pleadings," ECF No. 15-1 at 7, by relying *on Boardly v. Household Finance Corp., et.al*, 39 F. Supp. 3d 689, 710-11 (D. Md. 2014). Though the Court found the *Boardley* plaintiffs' allegations to be "conclusory," those plaintiffs did at least make "vague claims with regard to the treatment of the protected class in comparison to the outside class," which is more than Plaintiffs have provided here. *See id.* at 710. Therefore, Plaintiffs' reliance on this case is unfounded.

[8] While Plaintiffs are partially correct that under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) burden-shifting framework, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for their actions, this occurs only after the plaintiff first "carries the initial burden under the statute of establishing a prima facia case of racial discrimination." *Id.* Plaintiffs have failed to meet their initial burden, therefore Plaintiffs' argument that "Defendants have not filed an Answer to the First Amended Complaint," ECF No. 15-1 at 7, is extraneous.

only the first step of the framework applies). "To establish causation in a disparate-impact claim, [t]he plaintiff must begin by identifying the specific [ ] practice that is challenged." *Reyes*, 903 F.3d at 425 (internal quotations and citations omitted). Further, a plaintiff must show "that a specific policy caused a significant disparate effect on a protected group." *Letke v. Wells Fargo Home Mortg., Inc.,* No. 12-cv-3799-RDB, 2013 WL 6207836, at *3 (D. Md. Nov. 27, 2013).

Though identified as "the criteria that Defendants used to determine what homes should have forced place insurance" in the First Amended Complaint, ECF No. 12 ¶ 174, Plaintiffs' Opposition clarifies that it is "Defendants' policies in the calculation of forced place insurance" that has had a "disparate impact on African-Americans." ECF No. 15-1 at 8; ECF No. 12 ¶ 174. With this, Plaintiffs offer nothing more in the direction of establishing a "causal connection," let alone a robust one, as outlined by the Supreme Court in *Inclusive Communities. See* 576 U.S. at 543 ("A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact."). Further, simply stating that this criteria or policy "had a disparate impact on African-American homeowners, resulting in the payment of substantially higher monthly and overall payments," ECF No. 12 ¶ 174, is conclusory and not the equivalent of showing "that a specific policy caused a significant disparate effect on a protected group." *See Letke*, 2013 WL 6207836, at *4; *Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions . . . will not do.") (internal quotations and citations omitted); *see also Boardly*, 39 F. Supp. 3d at 712 (finding that Plaintiffs failed to state an FHA claim where they stated that a policy "had a significant and pervasive adverse impact on black homeowners" because it failed to show the policy caused "significant disparate impact."). Accordingly, because Plaintiffs also fail to state a disparate impact claim, the Court likewise grants Defendants' Motion to Dismiss Count VIII.

16

### D.  Abuse of Process Claim

Plaintiffs assert one claim of abuse of process against Defendants HSBC and Ocwen, which the Court interprets as a state law claim. *See* ECF No. 12 ¶¶ 178–191. To state a claim for abuse of civil process under Maryland law, a "plaintiff must set forth facts which, if proven, would establish: [f]irst, that the defendant willfully used process after it has issued in a manner not contemplated by law; . . . second, that the defendant acted to satisfy an ulterior motive; and third, that damages resulted from the defendant's perverted use of process[.]"[9] *Metro Media Entm't v. Steinruck*, 912 F. Supp. 2d 344, 350 (D. Md. 2012) (quoting *One Thousand Fleet Ltd. P'ship v. Guerriero*, 694 A.2d 952, 956 (Md. 1997)). "A cause of action for civil abuse of process," however, "requires that the plaintiff establish that an arrest of the person or a seizure of property of the plaintiff resulted from the abuse of process." *One Thousand Fleet*, 694 A.2d at 960 (citing *Bartlett v. Christhilf*, 69 Md. 219, 231, 14 A. 518 (1888)).

Here, Plaintiffs fail to do that. In the First Amended Complaint, Plaintiffs allege that "immediately" after executing the Settlement and Loan Modification Agreement, "Defendants began to engage in activities clearly prohibited by [the] written agreements," ECF No. 12 ¶ 186, and that Ocwen, acting as an agent of HSBC, "cancelled all of Plaintiffs' utilities and intensified property preservation activities." *Id.* ¶ 187. In failing to even cite to the relevant rule, Plaintiffs do not posit that the cancellation of their utilities or the increase in property preservation activities is a "seizure" of their property. And the Court will not interpret these allegations as such given that, in Plaintiffs' own words, after the execution of the Settlement and Loan

---

[9] Plaintiffs' attempt to clarify that "the loan modification process was the abuse," rather than the foreclosure, also fails to advance their argument. *See* ECF No. 15-1 at 8. The tort of abuse of process "requires a *perversion of court process* to accomplish some end which the process was not designed to accomplish; it does not arise from a regular use of process, even with ulterior motives." *Barnes v. Montgomery Cnty., Md.*, 798 F. Supp. 2d 688, 693 (D. Md. 2011) (internal quotations and citations omitted) (emphasis added). A loan modification is not a "court process," and Plaintiffs do not even attempt to argue that it is.

Modification Agreements, on July 19, 2019, by Consent Order, the foreclosure was vacated, "the report of sale was withdrawn, [and] ownership [in the Property] was re-vested to the Plaintiffs[.]" *Id.* ¶¶ 22, 47. Plaintiffs fail to allege legally cognizable damages under Maryland state law and, therefore, cannot maintain a cause of action for abuse of process. Accordingly, the Court grants Defendant HSBC and Ocwen's Motion to Dismiss Count IX.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Counts IV, V, VI, VII, VIII and IX of Plaintiffs' First Amended Complaint, ECF No. 14, is granted.[10] A separate Order shall issue.[11]

Date: <u>September  30, 2021</u>                                     <u>     /s/                                     </u>
                                                                                    GEORGE J. HAZEL
                                                                                    United States District Judge

---

[10] In Plaintiffs' Opposition to Defendants' Motion to Dismiss, Plaintiffs requested "in the alternative, that Plaintiffs be allowed to amend their Complaint or that any dismissal be without prejudice[.]" ECF No. 15-1 at 8. However, this Court finds that "in light of the fundamental deficiencies in [P]laintiffs' theory of liability," further amendment would be futile. *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008).

[11] In their Notice of Removal, Defendants asserted that this Court had subject-matter jurisdiction because the case presented a federal question. *See* ECF No. 1 ¶ 7–8 ("This Court has subject matter jurisdiction over the State Court Action pursuant to 28 U.S.C. § 1331, because it includes claims arising under the laws of the United States, namely, the Truth in Lending Act. All remaining claims are related to these allegations, and, as such, this court can exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367."). Following the dismissal of Counts IV–IX, the only remaining claims left in this matter are three state law claims for breach of contract (Counts I–III), ECF No. 12 ¶¶ 80–113, and the parties are not diverse. As such, the Court no longer retains subject matter jurisdiction over the state law claims and the matter must be remanded back to the Circuit Court of Maryland for Prince George's County.